UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDGAR AGUSTIN MOCTEZUMA MACIAS,<br><br>        Petitioner,<br><br>        v.<br><br>BRIAN HENKEY, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Acting Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General; MICHAEL HOLLINGSHEAD, Sheriff of Elmore County,<br><br>        Respondents. | Case No.  1:25-cv-00741-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Petitioner Edgar Agustin Moctezuma Macias's Petition for Writ of Habeas Corpus (Dkt. 1) and Motion for Temporary Restraining Order (Dkt. 2). Mr. Moctezuma entered the United States without authorization in 1997

and resides in Caldwell, Idaho. He was taken into custody by Immigration and Customs Enforcement on December 29, 2025, while on his way to work, and is being detained without bond under 8 U.S.C. § 1225. He argues that his mandatory detention under § 1225 violates the Immigration and Nationality Act.

For the reasons explained below, the Court will grant the Motion and order Mr. Moctezuma's immediate release from custody. The Court will also order Respondents to file a response to the Petition within seven days.

## BACKGROUND

Mr. Moctezuma is a national of Mexico who has lived in the United States since 1997. Dkt. 1 ¶ 17. He currently resides in Caldwell, Idaho. *Id.* He has three U.S. citizen children and no criminal history. *Id.* He was taken into custody on December 29, 2025, and is currently detained at the Elmore County Detention Center in Mountain Home, Idaho. *Id.* ¶¶ 1, 17.

This dispute is one of many recent cases to result from a policy shift by the Department of Homeland Security (DHS) and Executive Office of Immigration Review (EOIR). Historically, noncitizens potentially subject to immigration detention could be detained under two possible statutes. 8 U.S.C. § 1225 applied to noncitizens "seeking admission into the country"—in other words, those apprehended at or near the border—and did not allow for a bond hearing. But noncitizens already established in the United States were detained under 8 U.S.C.

§ 1226, which provides for discretionary detention with bond hearings to allow the release of detainees who do not pose a danger to the community or flight risk. *See Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). This statutory scheme reflects a longstanding distinction between noncitizens who reside in the United States—who have constitutional due process rights—and those who have not yet entered. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Since July 2025, DHS has attempted to eliminate this distinction. On July 8, 2025, ICE issued "Interim Guidance Regarding Detention Authority for Applicants for Admission," instructing that all persons who entered without inspection be subject to mandatory detention under § 1225(b)(2)(A), regardless of when they were apprehended or how long they have resided in the United States. On September 5, 2025, the Board of Immigration Appeals (BIA) issued a precedential decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), holding that immigration judges lack authority to conduct bond hearings for individuals who entered without admission, as they are deemed "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A).

Mr. Moctezuma filed this habeas petition on December 31, 2025, challenging his detention and seeking either immediate release or a bond hearing. Dkt. 1. He also filed an emergency motion for temporary restraining order. Dkt. 2.

**MEMORANDUM DECISION AND ORDER - 3**

## LEGAL STANDARD

The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To obtain relief, the plaintiff must show that (1) he is likely to succeed on the merits, (2) he will likely suffer irreparable harm without preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## ANALYSIS

This Court, like dozens of district courts across the country, has already and repeatedly held that ICE cannot subject individuals like Mr. Moctezuma, who already reside in the United States, to mandatory detention under § 1225.[1] For this reason, the analysis will be fairly brief. The Court will first consider potential

---

[1] *See, e.g.*, *Quijada Cordoba v. Knight*, 1:25-cv-00605, 2025 WL 3228945 (D. Idaho Nov. 19, 2025); *Villafana Rodriguez v. Knight*, 1:25-cv-00600, 2025 WL 3228285 (D. Idaho Nov. 19, 2025); *Alvarez Ortiz v. Freden*, No. 25-CV-960, 2025 WL 3085032, at *10 (W.D.N.Y. Nov. 4, 2025); *Guerrero Orellana v. Moniz*, No. 25-cv-12664, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *13; *Lepe v. Andrews*, No. 1:25-CV-01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-326, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Hasan v. Crawford*, No. 1:25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Alejandro v. Olson*, No. 1:25-CV-02027, 2025 WL 2896348, at *8 (S.D. Ind. Oct. 11, 2025); *Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *4 (S.D. Tex. Oct. 8, 2025); *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *Barrera v. Tindall*, No. 3:25-cv-241, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Mosqueda v. Noem*, No. 5:25-cv-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025).

jurisdictional issues before turning to the TRO factors.

### A. Jurisdiction

Federal courts have an independent obligation to determine whether subject matter jurisdiction exists. *Arbaugh v. Y&H Court*, 546 U.S. 500, 501 (2006). Though legal questions related to removal proceedings are typically beyond the purview of district courts, this Court, and others, have consistently found subjective matter jurisdiction when faced with virtually identical habeas challenges. *See, e.g.*, *Quijada Cordoba*, 2025 WL 3228945, at *2-4; *see also Jennings v. Rodriguez*, 583 U.S. 281 (2018). Although the Court has no power to review the removal proceedings themselves, Petitioner's challenge to his detention without a bond hearing is properly before the Court.

### B. Temporary Restraining Order

Having determined that jurisdiction is proper, the Court now considers whether Petitioner has met the burden for a TRO.

#### 1. Likelihood of Success on the Merits

First, Petitioner is likely to succeed in challenging his detention under § 1225. This prong of the TRO analysis is unusually easy because the Court has ruled on the issue more than 15 times in the past two months. *See, e.g.*, *Quijada Cordoba*, 2025 WL 3228945, at *2 n.3. There is no need to reanalyze the statutory question, so the Court will reproduce the most relevant part of a previous opinion:

As countless courts have concluded, Respondents' proposed interpretation "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 2025 WL 2716910, at *4 (collecting cases).

For 1225(b)(2)(A) to apply, several conditions must be met: an "examining immigration officer" must determine that the individual is (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Respondents' selective reading of the statute ignores the phrase, "seeking admission." This "violates the rule against surplusage and negates the plain meaning of the text." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (citing *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). "As numerous courts have observed, if all 'applicant[s] for admission' also are 'seeking admission,' then the words 'seeking admission' would be surplusage." *Alvarez Ortiz*, 2025 WL 3085032, at *7 (collecting cases).

If Congress did not intend to distinguish between an "applicant for admission" and those "applicant[s] for admission" who are "seeking admission," it simply could have omitted the "seeking admission" language." But it did not. As "every clause and word of a statute should have meaning," this phrase, "seeking admission," must therefore mean something separate from "an applicant for admission." *Polansky*, 599 U.S. at 432. The use of the present participle "seeking" implies the present action of "asking for" or "trying to acquire or gain," and the "entry," as it has long been understood, implies "a crossing into the territorial limits of the United States." *Lepe*, 2025 WL 2716910, at *5 (citations omitted). "To piece this together, the phrase 'seeking admission' means that one must be actively seeking' 'lawful entry.'" *Id.*

While Petitioner may qualify as an "applicant for admission," the phrase "seeking admission" cannot reasonably be stretched to encompass someone who entered the country years ago, established a life here, and was living peacefully in Idaho until his arrest. At the time of his apprehension, Petitioner was not "seeking" anything—he was simply present in the United States.

This plain reading of § 1225 places it in harmony with § 1226

and the overall statutory scheme. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) (explaining the words of a statute must be read in their entire context and with a view to their place in the overall statutory scheme). The entire framework of § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," relates to the inspection process at or near the border: "Inspection" occurs at ports of entry, *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021); "expedited removal" applies to those "arriving in the United States," § 1225(b)(1)(A); and the provision addresses "stowaways" discovered at borders, § 1225(a)(2).

Thus, as the Supreme Court explained, § 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. Nothing in this framework contemplates interior enforcement against individuals who have resided in the country for years.

"And just to pile on a bit," Respondents' construction of the statute "would create surplusage twice over," *Polansky*, 599 U.S. at 432, by rendering the recent amendment to 8 U.S.C. § 1226(c) meaningless. Section 1226(c)(1)(E), added in 2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E). If § 1225(b)(2)(A) already mandates the detention of *all* noncitizens who have not been admitted, as Respondents contend, then Laken Riley serves no purpose.

"This is a presumptively dubious result." *Martinez*, 792 F. Supp. 3d at 221. Courts "do not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022). Accordingly, this Court declines to find "that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." *Maldonado*, 2025 WL 2374411, at *12 (quoting *Taylor*, 596 U.S. at 857).

Finally, Respondents' contrary interpretation also upends decades of settled practice without clear congressional intent. Since IIRIRA's enactment in 1996, DHS has consistently applied § 1226(a) to noncitizens who entered without inspection but were apprehended

> while residing in the United States. *See Rodriguez*, 779 F.Supp.3d at 1260-61. Executive Branch regulations issued contemporaneously with IIRIRA explicitly stated that noncitizens "present without having been admitted or paroled (formerly referred to as [those] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). As the Supreme Court has recognized, such "longstanding practice of the government" serves as an important interpretive aid, *Loper Bright*, 603 U.S. at 386, adding an additional basis to refute Respondents' interpretation.

*Id.* at *14-17.

### 2. Irreparable Harm

Petitioner will suffer irreparable harm in the absence of a TRO. Petitioner's detention under § 1225 rather than § 1226 likely constitutes a violation of procedural due process. *See id.* at *7-8. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quotation omitted). The Ninth Circuit has further recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Id.* at 995. The grave consequences of Petitioner's continued detention weigh in favor of a TRO.

### 3. Balance of Equities and Public Interest

The final two *Winter* factors merge when the government is the nonmoving

party. These factors also support a TRO. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037 (N.D. Cal. 2025). Conversely, Petitioner's lack of criminal history and almost 30 years of residency in the United States suggests that the public gains nothing from his detention. The balance of equities likewise strongly favors Petitioner, who will be jailed indefinitely in the absence of relief. Respondents, in contrast, do not suffer harm "in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

### C. Remedy

Accordingly, Petitioner has met the threshold for a temporary restraining order. The question of the proper remedy remains. Petitioner asks the Court to order his immediate release and to prohibit Respondents from communicating to him without counsel or transferring him out of the District of Idaho.

A district court has equitable discretion, "as law and justice require," for remedying unlawful detention in a habeas petition pursuant to § 2254. *See Brown v. Davenport*, 596 U.S. 118, 127-28 (2022). Despite this discretion, however, relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." *E. Bay Sanctuary Covenant v.*

*Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). Thus, relief "must be narrowly tailored to remedy the specific harm shown." *Id.*

In many similar circumstances, a bond hearing would be sufficient to rectify the violation of Petitioner's unlawful detention. *See E.C. v. Noem*, No. 2:25-cv-01789, 2025 WL 2916264, at *12 (D. Nev. Oct. 14, 2025); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 45-46 (1st Cir. 2021). Here, however, Petitioner's lack of criminal history, strong family ties to the United States, and long duration of residency all support his immediate release. In recent months, courts across the country have ordered the release of detainees in similar situations. *E.g., Lepe*, 2025 WL 2716910, at *10; *J.U. v. Maldonado*, No. 25-cv-4836, 2025 WL 2772765, at *10 (E.D.N.Y. Sept. 29, 2025); *Rosado v. Figueroa*, No. 25-cv-2157, 2025 WL 2337099, at *19 (D. Ariz. Aug. 11, 2025); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025). As one court explained, "[w]ithout a legitimate interest in her detention, immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention." *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13-14 (W.D. Tex. Oct. 2, 2025). The same is true here.

Respondents' refusal to abandon their unlawful policy also plays into the Court's analysis. This Court's orders are binding only on the individual habeas petitioner, meaning that Respondents will presumably continue to enforce their

interpretation of § 1225 on immigrant detainees until the Ninth Circuit issues a binding ruling. Detainees will continue to file nearly identical habeas petitions then sit in jail waiting for a judicial decision. This in itself represents a substantial deprivation of liberty, and ordering a bond hearing instead of release would further exacerbate this delay. Such an approach is not justifiable for an individual who is not a flight risk or danger to the community.

Accordingly, the Court orders Petitioner's immediate release from custody.

## ORDER

**IT IS ORDERED that:**

1. Petitioner's Motion for a Temporary Restraining Order (Dkt. 2) is GRANTED. Accordingly, Petitioner shall be immediately released from custody.

2. Respondents shall file a response to the Petition for Writ of Habeas Corpus by January 12, 2026.

3. Petitioner's reply, if any, shall be filed no later than January 15, 2026.



DATED: January 2, 2026

B. Lynn Winmill
U.S. District Court Judge